UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALBARO PIMENTEL, | ) | Case No. 1:16CV2099 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Albaro Pimentel ("Pimentel" or "claimant") challenges the final decision of
Defendant Commissioner of Social Security ("Commissioner"), denying his applications for
Disability Insurance Benefits ("DIB"), a Period of Disability, and Supplemental Security Income
("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq.
("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the
undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule
72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported
by substantial evidence and, therefore, conclusive. For the reasons set forth below, the
Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

1

## I.  PROCEDURAL HISTORY

On July 14, 2010, Pimentel applied for Disability Insurance, and on July 22, 2010, for SSI benefits. (R. 11, PageID #: 84, 275-280, 317-324.) Pimentel stated that he became unable to work because of his disabling condition on January 1, 2009. (R. 11, PageID #: 84, 318.) Pimentel's applications were denied initially and upon reconsideration. (R. 11, PageID #: 149-150, 125-148, 178-179, 151-177.) Thereafter, Pimentel filed a written request for a hearing before an administrative law judge. (R. 11, PageID #: 204-206.)

An Administrative Law Judge ("the ALJ") convened a hearing on June 5, 2012, to hear Pimentel's case. (R. 11, PageID #: 101-124.) Pimentel appeared at the hearing, was represented by counsel, and testified. (R. 11, PageID #: 103.) A vocational expert ("VE") attended the hearing and provided testimony. (R. 11, PageID #: 103, 121-123.)

On August 14, 2012, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Pimentel was disabled. (R. 11, PageID #: 84-95; *see generally* 20 C.F.R. §§ 404.1520(a), 416.920(a).) Based on his review, the ALJ concluded Pimentel was not disabled. (R. 11, PageID #: 84, 95.)

The Appeals Council denied Pimentel's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, PageID #: 72-74.) Pimentel sought judicial review of the Commissioner's final decision.

This court found error, reversed the ALJ's decision, and remanded the claim. (R. 11, PageID #: 765-788; *Pimentel v. Comm'r Soc. Sec. Admin.*, No. 1:14CV112, 2014 WL 7370079 (N.D. Ohio Dec. 29, 2014).) The court stated that the ALJ failed to discuss and weigh the

opinions of a consultative examining psychologist and a state agency reviewing psychologist, and did not account for Pimentel's limitations in the RFC. (R. 11, PageID #: 766.)

On remand, another ALJ held a hearing on the claim on August 26, 2015. (R. 11, PageID #: 680-739.) Pimentel appeared at the hearing (with an interpreter), was represented by counsel, and testified. (R. 11, PageID #: 682.) A vocational expert attended the hearing and provided testimony. (R. 11, PageID #: 702-730.) A medical expert also testified. (R. 11, PageID #: 693-701.)

On February 1, 2016, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Pimentel was disabled. (R. 11, PageID #: 656-671; *see generally* 20 C.F.R. §§ 404.1520(a), 416.920(a).) Based on his review, the ALJ concluded Pimentel was not disabled. (R. 11, PageID #: 657, 671.)

The Appeals Council denied Pimentel's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, PageID #: 646-649.)

Pimentel now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

## II. PERSONAL BACKGROUND INFORMATION

Pimentel was born on November 30, 1969, and was 39 years old as of his alleged disability onset date. (R. 11, PageID #: 93, 277, 314.) Accordingly, Pimentel was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). Pimentel has a limited education, and is able to communicate in English. (R. 11, PageID #: 93, 317.) Pimentel

had past relevant work[1] as a building maintenance worker, and a production assembler. (R. 11, PageID #: 669, 704, 708.)


## III. RELEVANT MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Pimentel's brief alleging errors by the ALJ. As noted earlier, Pimentel applied for Disability Insurance and SSI benefits in July 2010. (R. 11, PageID #: 84, 275-280, 317-324.) Pimentel listed his physical or mental conditions that limit his ability to work as "bipolar, hbp, sinuses, hearing loss in both ears." (R. 11, PageID #: 318.)

The court's December 2014 decision remanding the case for further proceedings recited the relevant medical evidence regarding Pimentel's claim. (R. 11, PageID #: 767-772); *see also Pimentel v. Comm'r Soc. Sec. Admin.*, No. 1:14cv112, 2014 WL 7370079, *1-4 (N.D. Ohio Dec. 29, 2014). This court incorporates the relevant medical evidence set forth in that prior decision. More recently, on April 29, 2015, state agency consultant Evelyn T. Rivera, Ph.D., a clinical psychologist, had a "short interview" with Pimentel and completed a psychological evaluation of him. (R. 11, PageID #: 909-912.) The following month Dr. Rivera completed a Medical Source Statement. (R. 11, PageID #: 913-915.) In March 2015, Pimentel had two updated audiology evaluations (R. 11, PageID #: 875, 877), but otherwise the relevant medical evidence before the court remains the same.

---

[1]  The previous ALJ's decision had characterized this past relevant work as "a housekeeping cleaner and a small products assembler." (R. 11, PageID #: 93, *see also id.* at 121-122.)

4

## IV. TESTIMONY OF VOCATIONAL EXPERT

At the second hearing, a VE provided testimony. (R. 11, PageID #: 702-730.) The VE determined that Pimentel had past relevant work as a building maintenance worker (commercial cleaner), DOT number 381.687-014, which is heavy exertion, but was performed as light, SVP 2. (R. 11, PageID #: 704-705, *see also id.* at 669.) Another past job was classified as a production assembler, DOT 706.687-010, unskilled, light level, SVP 2. *Id.* at 708.

The ALJ posed a hypothetical question concerning a hypothetical individual of the claimant's age, with a high school diploma from the Dominican Republic, who performed the same past relevant work as the claimant. The hypothetical person cannot work in proximity to unprotected heights, dangerous moving machinery or other workplace hazards. Because of a hearing impairment, the hypothetical person can work only in a quiet environment, and can communicate with others by telephone no more than frequently. (R. 11, PageID #: 709.) Further, the hypothetical person can speak, understand, read, and write fluently in Spanish; can understand and follow only simple instructions written or spoken in English; and can speak and write only simply in English. (R. 11, PageID #: 709-710.)

The hypothetical person cannot do work involving high or strict production quotas; cannot do assembly line or piece rate work; cannot do work involving negotiation, arbitration, confrontation or other intense personal interactions with the public, coworkers, or supervisors. The person cannot manage or supervise other people; cannot do work involving responsibility for the health, safety, or welfare of other people; and cannot do work involving frequent changes or variations of tasks or routine. The ALJ clarified that he was using the term "frequent" only as it is used colloquially, and not as it is defined in the *Dictionary of Occupational Titles* ("DOT")

5

or in 20 CFR 404.1567 or 416.967. The VE was asked whether such a hypothetical individual could do any of the claimant's past relevant work. (R. 11, PageID #: 710.) The VE responded that such a person can perform the past work as a cleaner, not as a production assembler. (R. 11, PageID #: 711-712.)

The ALJ then asked whether there would be other work that such a hypothetical person could perform. The VE responded that such a person could perform a number of jobs:  The person could perform work as a sales attendant, DOT number 299.677-010, which is light exertion, SVP 2. There are 1,300 such jobs in the Cleveland regional economy, 7,200 in the state of Ohio, and 210,000 positions nationally. (R. 11, PageID #: 712.)

The VE also identified work as a housekeeper, DOT number 323.687-014, unskilled light level, SVP 2. There are 1,400 such jobs in the regional economy, 9,000 in the state, and 310,000 positions nationally. Also, a dining room attendant, DOT number 311.677-018, unskilled medium level exertion, SVP 2. There are 1,500 such jobs in the regional economy, 7,500 in the state, and 300,000 positions nationally. The VE testified there would be other jobs as well. (R. 11, PageID #: 713.)

In response to the ALJ's question, the VE testified that the hypothetical was not inconsistent with the DOT, although there is "no specific phone designation in the DOT," and the DOT is English based. The VE testified that he had supplemented his responses based on his professional knowledge and experience. (R. 11, PageID #: 713-714.)

The VE also testified that the DOT does not address issues of absenteeism, or being off task during work, but based on his professional knowledge and experience, the VE stated that the

maximum level of absenteeism that would be tolerated is "no more than one day per month." (R. 11, PageID #: 714.)

Counsel for Pimentel was permitted to examine the VE, within the limits discussed by the ALJ. (R. 11, PageID #: 703, 715, 720-721.) Counsel began exploring the issue of pace (R. 11, PageID #: 719-722), and the ALJ at that point posed a second hypothetical:

> We'll leave everything from my first hypothetical in place and add the following. And the addition is going to be the hypothetical person could not and cannot do work that requires a rapid pace. That's the addition to the previous hypothetical.

(R. 11, PageID #: 722.) The VE responded that it did not change his answer to the original hypothetical in any way. *Id.*

Counsel sought clarification of the VE's answer, asking whether the three occupations "would never require a rapid pace." (R. 11, PageID #: 723, 725.) The VE responded that the DOT describes how jobs are customarily performed, and that there could be some variance. *Id.* at 723.

Counsel posed a hypothetical, adding to the original hypothetical the restriction that there could never be any multi-tasking involved, and the VE responded that the additional factor would not change his answer. (R. 11, PageID #: 726.) He stated, "these are simple tasks," and as generally performed, his answer remained, no. *Id.* at 726-727. Counsel added that the environment must be a static environment, and every change must be introduced gradually. The VE responded that his testimony would not change. *Id.* at 727.

In seeking additional time for questioning the VE, counsel also argued that the ALJ failed to incorporate opinions by psychiatrist Theophilus Arthur-Mensah, M.D., and Felicia Fior-

7

Nossek, APRN, among other sources, in formulating his hypothetical restrictions. (R. 11, PageID #: 734, 736.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his February 1, 2016, decision:

1. Mr. Pimentel meets the insured status requirements of the Social Security Act through March 31, 2009.

2. Mr. Pimentel has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. Mr. Pimentel has the following severe impairments (20 CFR 404.1520(c) and 416.920(c)):
> Bipolar disorder and/or schizoaffective disorder.
> Bilateral sensorineural hearing loss not treated with cochlear implant.

4. Mr. Pimentel does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that Mr. Pimentel has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:
> Mr. Pimentel could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other workplace hazards.
> Because of a hearing impairments, Mr. Pimentel could and can work only in a quiet environment.
> Because of a hearing impairment, Mr. Pimentel could and can communicate with others by telephone up to and no more than frequently.
> Mr. Pimentel could and can speak, understand, read, and write fluently in Spanish.
> Mr. Pimentel could and can understand and follow only simple instructions written or spoken in English.
> Mr. Pimentel could and can speak and write only simply in English.

Mr. Pimentel could not and cannot do work involving high or strict production quotas.
Mr. Pimentel could not and cannot do assembly line work or piece rate work.
Mr. Pimentel could not and cannot do work involving negotiation, arbitration, confrontation, or other intense interpersonal interactions with the public, coworkers, or supervisors.
Mr. Pimentel could not and cannot manage or supervise other people.
Mr. Pimentel could not and cannot do work involving him being responsible for the health, safety, or welfare of other people.
Mr. Pimentel could not and cannot do work involving frequent changes or variation of tasks or routine. As used in the preceding sentence, the term "frequent" is used in its colloquial sense and not as it is defined in the U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT") or in 20 CFR 404.1567 or 416.967.

6. Mr. Pimentel is capable of performing past relevant work as a building maintenance worker, which the DOT calls commercial cleaner. This work does not require the performance of work-related activities precluded by Mr. Pimentel's residual functional capacity.

7. Mr. Pimentel has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision.

(R. 11, PageID #: 659-660, 662, 669-670.)

## VI. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a)

9

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Comm'r Soc. Sec. Admin.*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r Soc. Sec. Admin.*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).


VII. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r Soc. Sec. Admin.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human*

10

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII. ANALYSIS

Pimentel briefs two issues for review:

1. Whether the administrative law judge erred at Step 4 of the sequential evaluation where he relied on vocational expert that contradicted evidence from the Dictionary of Occupational Titles and this contradiction was not explained?

2. Whether the administrative law judge erred in his evaluation of treating source opinion where Dr. [Arthur-Mensah] and Prescribing Nurse Fior-Nossek noted limitations on the ability to perform even unskilled jobs and the administrative law judge did not address the weight he gave this opinion?

(R. 13, PageID #: 1022.)

11

A.  Testimony of Vocational Expert

Pimentel asserts that the ALJ's hypothetical included a limitation that the hypothetical person "can work only in a quiet environment," yet the VE testified that such a person could work as a building maintenance worker (commercial cleaner), DOT number 381.687-014. (R. 13, PageID #: 1037-1038, citing PageID #: 709, 711.) Pimentel states that, according to the DOT, the maintenance worker position is exposed to a "moderate" noise level. (R. 13, PageID #: 1039; *see also id.* at 1048, 822.) "Moderate" noise is defined in the *Selected Characteristics of Occupations in the Dictionary of Occupational Titles* ("SCODOT") as comparable to the noise in a department store or grocery store, as opposed to the "quiet" noise encountered in a library or art museum. (R. 13, PageID #: 1038-1039, citing SCODOT, Appx. D, "Environmental Conditions.") Pimentel contends that the ALJ failed to resolve, or even recognize, the inconsistency between the limitation that the hypothetical person "can work only in a quiet environment," and the VE's testimony that such a person could work as a building maintenance worker, which the DOT states is exposed to a moderate level of noise. (R. 13, PageID #: 1040.)

An ALJ can rely on the testimony of a vocational expert identifying specific jobs available in the economy that an individual with the claimant's limitation(s) could perform as substantial evidence supporting an ALJ's finding that the claimant can perform other work. *Wilson*, 378 F.3d at 549. An ALJ complies with agency policy by asking whether there is any discrepancy between the VE's opinions and the DOT requirements for the jobs identified. *Beinlich v. Comm'r Soc. Sec. Admin.*, No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept. 9, 2009) (citing SSR 00-4p).

12

The Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p." *Beinlich*, 2009 WL 2877930, at *4 (citing *Lindsley v. Comm'r Soc. Sec. Admin.*, 560 F.3d 601,  606 (6th Cir. 2009)); *see also Martin v. Comm'r Soc. Sec. Admin.*, No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006) (ALJ does not have duty to conduct independent investigation into VE's testimony).  Rather, the *Beinlich* court continued:  "This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich*, 2009 WL 2877930, at *4 (citing *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)).

The ALJ's hypothetical question here included the limitation that, because of a hearing impairment, the hypothetical person "can work only in a quiet environment." (R. 11, PageID #: 709.) The ALJ and the VE discussed the "quiet" environment limitation, and the VE stated that the hypothetical person can perform past work as a cleaner. *Id.* at 711. Past work as a production assembler was precluded because "it's a noisy environment." *Id.* at 711-712. In response to the ALJ's question, the VE testified that the hypothetical and the VE's testimony were "not inconsistent with the DOT." *Id.* at 713.

Counsel for Pimentel had the opportunity to cross-examine the vocational expert. (R. 11, PageID #: 715-737.) Counsel pursued the issues of (1) whether absenteeism would be more strictly viewed during a probationary period, *id.* at 717-718; (2) whether a housekeeper would ever have to work at a rapid pace, *id.* at 719-725; (3) whether a limitation on any multitasking would impact the VE's testimony,  *id.* at 726-727; and, finally (4) counsel asked a hypothetical where the work environment must be static, with the limitation that changes must be gradually

introduced, *id.* at 727-730. After the VE responded to those inquiries, the ALJ stated that he had another hearing pending, and ceased cross-examination. The ALJ noted that counsel had already asked additional hypotheticals, and the VE had addressed them. *Id.* at 730-731. The ALJ advised that counsel could raise issues in a post-hearing brief.[2] *Id.* at 731. Counsel stated that he had further questions for the VE, and requested a supplementary hearing, which request the ALJ denied. *Id.* at 732, 737. Counsel indicated that there was medical evidence which was not fully covered by the ALJ's hypothetical. *Id.* at 734-736.

In his cross-examination of the VE, counsel for Pimentel failed to address the limitation to a quiet environment, which the ALJ had included in his hypothetical. Instead, counsel raised a number of issues that had not been addressed by the hypothetical, and asked for further cross examination to raise additional issues that he contended had not been addressed in the hypothetical. Counsel did not question the VE on the noise issue, which was included in the hypothetical (R. 11, PageID #: 709), was the subject of an extended discussion between the ALJ and the VE (*id.* at 711), and which Pimentel now claims was incorrectly resolved by a job that the VE stated Pimentel could perform. As noted by the Commissioner (R. 15, PageID #: 1069), counsel did not raise the issue of a conflict between the DOT and the VE's testimony on this issue. Because Pimentel did not bring the alleged conflict to the attention of the ALJ, the ALJ did

---

[2] There is no indication that counsel for Pimentel filed a supplemental brief, although counsel did write a post-hearing letter (R. 11, PageID #: 808-809) to the ALJ regarding his objections to the time limitations on cross-examination of the ALJ, as well as renewing his request for a supplemental hearing. *See generally* R. 13, PageID #: 1035-1036. No supplemental hearing was held.

not need to explain how the conflict was resolved. *See, e.g.*, *Beinlich*, 2009 WL 2877930, at *4; *Martin*, 2006 WL 509393, at *5. The court finds no error.

## B.  Weight of Medical Opinions

Pimentel argues that the ALJ failed to give appropriate weight to the October 2012 opinion of Dr. Arthur-Mensah and Nurse Fior-Nossek that noted limitations on Pimentel's ability to perform even unskilled jobs. (R. 13, PageID #: 1042-1046.) Pimentel asserts that, although Fior-Nossek as a board-certified Advanced Practice Registered Nurse ("APRN") is not an acceptable medical source under the applicable regulations, she had met with Pimentel twenty-one times in twenty-two months, and her opinion should have been evaluated and weighed by the ALJ. *Id.* at 1043. In addition, Pimentel states that, although Dr. Arthur-Mensah was not a treating physician, he examined Pimentel at least once, and had access to Fior-Nossek's records. *Id.* Pimentel contends that Dr. Arthur-Mensah's opinion, as an examining physician, should have been evaluated and weighed by the ALJ. *Id.*

The ALJ has the responsibility for reviewing all the medical evidence in the record in making his determinations. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). An ALJ must also evaluate each medical opinion in the record. *Smith v. Comm'r Soc. Sec. Admin.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In addition to reviewing and considering all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c).

The Sixth Circuit in *Gayheart* has explained the weight generally accorded to various types of medical sources:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), [20 C.F.R. §§ ] 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2).

*Gayheart v. Comm'r Soc. Sec. Admin.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Ealy v. Comm'r Soc. Sec. Admin.*, 594 F.3d 504, 514 (6th Cir. 2010). Although the ALJ generally accords more weight to a treating source over a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy*, 594 F.3d at 514-515; *Smith*, 482 F.3d at 875.

Even when there is no treating source opinion entitled to controlling weight, an ALJ must still determine how much weight to assign to opinions in the record by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although regulations direct ALJs to consider the pertinent factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Comm'r Soc. Sec. Admin.*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

At the time of the ALJ's decision,[3] Fior-Nossek, who was an APRN, was not "an acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.913(a); *see also* SSR 06-3p, 2006

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, but the ALJ's decision was rendered before the new regulations took

WL 2329939, at *1.  SSR 06-3p discusses the importance of the distinction between "acceptable medical sources" and other health care providers, as follows:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight.

SSR 06-3p, 2006 WL 2329939, at *2 (internal citations omitted).

Although information from other sources such as an APRN cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function. SSR 06-3p, 2006 WL 2329939, at *2; *Cruse v. Comm'r Soc. Sec. Admin.*, 502 F.3d 532, 541 (6th Cir. 2007); *Reynolds v. Colvin*, No. 1:12CV2994, 2013 WL 5316578, at *7 (N.D. Ohio Sept. 23, 2013).  Opinions from "other sources" who have seen the claimant in a professional capacity should be evaluated by considering how long the source has known the claimant, how consistent the source's opinion is with other evidence, and how well the source's opinion is explained. *Cruse*, 502 F.3d at 541. The ALJ should explain the weight given to the other source's opinion, and the regulation further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer

---

effect. For the sake of consistency, the court continues to cite the language from the regulations that were in effect at the time of the ALJ's decision.

to follow the adjudicator's reasoning, when such opinions may
have an effect on the outcome of the case.

*Cruse*, 502 F.3d at 541 (quoting SSR 06-3p, 2006 WL 2329939, at *6); *see also* 20 C.F.R. §§

404.1527(e)(2) (eff. Aug. 24, 2012), 416.927(e)(2) (eff. Aug. 24, 2012).

Pimentel refers to an October 23, 2012, letter on Dr. Arthur-Mensah's letterhead, signed

by Fior-Nossek and Dr. Arthur-Mensah, which provides a summary of Pimentel's psychiatric

care since his initial evaluation in their office on March 31, 2010. (R. 13, PageID #: 1042, citing

R. 11, PageID #: 644-645.) The ALJ addressed this letter in his decision as follows:

> Dr. Arthur-Mensah noted on October 23, 2012, that he initially evaluated Mr.
> Pimentel on March 31, 2010 (Exhibit 19F). Mr. Pimentel presented with
> symptoms of major depressive disorder with mood lability and auditory
> hallucinations. Dr. Arthur-Mensah opined that Mr. Pimentel's symptoms met the
> criteria for schizoaffective disorder, depressive type. In the past two years, Mr.
> Pimentel has notably suffered from the following symptoms:  mood lability
> including:  episodes of depression, hopelessness and helplessness, mood swings,
> irritability, anxiety, racing thoughts, auditory hallucinations, paranoia, poor sleep,
> decreased motivation and energy, poor concentration, and difficulty in crowded
> places. All of these symptoms have a negative effect on concentration, judgment,
> ability to complete tasks, and maintain employment [even] for unskilled jobs. Mr.
> Pimentel has reported compliance with medications. It is documented, that on
> occasion, he has used alcohol to self-medicate. He has demonstrated
> [decompensation] on at least three documented occasions, May 27, 2010, August
> 5, 2010, and January 6, 2012. During these times, some of his original symptoms
> returned including depressed mood, anxiety, and irritability. Dr. Arthur-Mensah
> noted Mr. Pimentel needed further workup for his meningioma or the right frontal
> lobe since his computed tomography (CT) on March 5, 2010. I considered this
> opinion and noted that Dr. Arthur-Mensah listed Mr. Pimentel's symptoms. His
> symptoms do cause occupational and social dysfunction.

(R. 11, PageID #: 666.) Plaintiff argues that the ALJ erred because he considered the above

opinion, but did not expressly assign a weight. SSR 06-3p, however, indicates that the ALJ can

assign a weight or "otherwise ensure that the discussion of the evidence in the determination or

decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning," which

is what the ALJ's decision accomplishes. *See* 2006 WL 2329939, at \*6; *Brewer v. Astrue*, No. 4:11–CV–00081, 2012 WL 262632, at \*10 (N.D. Ohio Jan. 30, 2012) ("SSR 06–3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from other sources." (internal quotation marks and citation omitted)). Further, as Commissioner concedes, the ALJ's decision "explicitly stated that he agreed with Dr. Arthur-Mensah's opinion and included limitations commensurate with that opinion [in the RFC], it is reasonable to infer that the ALJ gave the opinion significant weight, so a remand would be 'an idle and useless formality.'" (R. 15, PageID # 1066 *quoting Rabber v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). When considering the above excerpt and the ALJ's further discussion of other opinions from Fior-Nossek and Dr. Arthur-Mensah elsewhere in his decision, it is apparent that the decision complied with the pertinent regulations.

In addition to the October 2012 letter, the ALJ also considered earlier Mental Functional Capacity Assessments completed by Fior-Nossek and Dr. Arthur-Mensah in April and May 2010. (R. 11, PageID #: 665, citing R. 11, PageID #: 1003-1005.) The ALJ addressed these 2010 assessments in his decision as follows:

> I noted that out of the twenty mental-related work-related abilities evaluated, six were "not significantly limited," thirteen were "moderately limited," and one was "markedly limited" (maintaining concentration, persistence or pace for extended periods). The symptoms were limited to last 9-11 months. I found there was insufficient medical evidence in the treatment notes of Dr. Arthur-Mensah or Ms. Fior-Nossek or in other treatment notes in the record considered as a whole to support the opinion that maintain[ing] concentration, persistence or pace for extended periods [is] "markedly limited." I gave weight to the other opinions, and they are reflected in the mental limitations in the residual functional capacity stated above.

(R. 11, PageID #: 666.)

The ALJ also took note of a Medical Source Statement completed by Dr. Arthur-Mensah and Fior-Nossek on March 20, 2012, which found five "marked" and two "extreme" limitations on Pimentel's abilities to perform work-related activities. (R. 11, PageID #: 666, citing R. 11, PageID #: 629-630, 642-643.) The "Medical Source Statement," as an initial matter, was a form that provided check-boxes to evaluate the Pimentel's abilities, and it requested "comment[s] on any abilities that are markedly or extremely limited." (R. 11, PageID #: 629, 642.) Neither Dr. Arthur-Mensah nor Fior-Nossek supplied explanatory comments. *Id.* at 629-630, 642-643. ALJs may give little weight to "check-off forms" that do not cite clinical test results, observations, or other objective findings   See generally *Ellars v. Comm'r Soc. Sec. Admin.*, No. 15-4039, 2016 WL 2610234, at *2 (6th Cir. May 6, 2016) (citing cases).

The ALJ recognized that Pimentel had a longitudinal relationship with Fior-Nossek and Dr. Arthur-Mensah. He further determined their March 2012 opinions "appear to be based more on the subjective complaints of Mr. Pimentel rather than objective observations." (R. 11, PageID #: 666.) The ALJ concluded their opinions were inconsistent with multiple counseling records spanning 2010 and 2011; and therefore, he assigned the opinion "little weight because the preponderance of the evidence does not support the marked and extreme limitations." *Id.* Reading the decision as a whole, the ALJ assessed Fior-Nossek and Dr. Arthur-Mensah's opinions after considering their examining relationship and the length, nature and extent of the treatment relationship (citing treatment records ("7F") from 2010 and 2011, R. 11, PageID #: 666). Moreover, he addressed the supportability and consistency of the evidence regarding their opinions. (R. 11, PageID #: 665, 666.) *See generally Cruse*, 502 F.3d at 541.

In addition, as noted by the Commissioner (R. 15, PageID #: 1067), there was evidence in the record to support finding Pimentel had a moderate limitation in maintaining attention, concentration, persistence or pace, and in interacting with others. *See, e.g.*, R. 11, PageID #: 661, 665 (Halas), 667 (Dietz). The opinion evidence supported such limitations, and the ALJ's RFC incorporated the same. The RFC assessed by the ALJ for an unskilled position includes several limitations on Pimentel's ability to perform work tasks and interact with others, including that he cannot do work involving high or strict production quotas, assembly line work or piece rate work; that he cannot do work involving negotiation, arbitration, confrontation, or other intense interpersonal interactions with the public, coworkers, or supervisors; that he cannot manage or supervise other people, or do work being responsible for the health, safety, or welfare of others; and, that he cannot do work involving frequent changes or variation of tasks or routine.  (R. 11, PageID #: 662.)

The ALJ's determination was supported by a thorough consideration of the medical evidence in the record. *See generally* R. 11, PageID #: 661-668. Reviewing the parties' arguments and the evidence of record on this issue, the court finds the ALJ's decision is supported by substantial evidence, regardless of whether this court would resolve issues of fact in dispute differently, or substantial evidence could support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

## IX. CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence as discussed in the ALJ's decision is

such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.


Date: _June 29, 2017_                    s/ *David A. Ruiz*
                                        David A. Ruiz
                                        United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).

22